*1035 ATTORNEY DISCIPLINARY PROCEEDINGS
PER CURIAM.*
| j This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Lewis B. Blanche, an attorney licensed to practice law in Louisiana but currently on interim suspension based upon his conviction of a serious crime. In re: Blanche, 10-2256 (La.11/9/10), 47 So.3d 406.[1]
FORMAL CHARGES

Count I

On April 21, 2010, respondent was charged by bill of information, filed in the 19th Judicial District Court for the Parish of East Baton Rouge under docket number 04-10-0595, with creating and operating a clandestine laboratory for the unlawful manufacture of a controlled dangerous substance, a felony, in violation of La. R.S. 40:983. He was also charged with possession of methamphetamine, a felony, in violation of La. R.S. 40:967(C). On June 3, 2010, respondent was charged in a separate bill of information, filed in the same court under docket number 06-10-0155, with an additional charge of creating or operating a | clandestine laboratory for the unlawful manufacture of a controlled dangerous substance.
On June 3, 2010, respondent pleaded guilty to all charges in both 04-10-0595 and 06-10-0155. On August 18, 2010, in docket number 04-10-0595, respondent was sentenced to serve fifteen years at hard labor for the first charge to run consecutive with five years at hard labor for the second charge. The court suspended execution of the sentence and placed respondent on active, supervised probation for five years with special conditions, including the requirement that he enter the Right Turn of Maryland Alcohol and Drug Treatment Facility by August 20, 2010 and successfully complete the program. In docket number 06-10-0155, respondent was sentenced to serve fifteen years at hard labor to run consecutive with the sentence in docket number 04-10-0595. Again, the court suspended execution of the sentence and placed respondent on *1036 active, supervised probation for five years, to run concurrent with the probationary period in docket number 04-10-0595.
The ODC alleged respondent’s conduct violated Rule 8.4(b) (commission of a criminal act that reflects adversely on the lawyer’s honesty, trustworthiness, or fitness as a lawyer) of the Rules of Professional Conduct.

Count II

As a result of an incident that occurred on or about March 5, 2004, respondent was charged with speeding and first offense DWI. On August 31, 2004, respondent pleaded guilty to the DWI charge, and the speeding charge was dismissed. The court deferred sentencing for one year and, instead, placed respondent on bench probation with special conditions, including fines, the requirement that he refrain from other criminal conduct, and community service.
| ¡¡Respondent was given notice to return to court on December 7, 2004 to show proof of payment of court costs and fines and compliance with the conditions of his probation. However, respondent failed to appear, and a bench warrant was issued for his arrest. The next day, respondent appeared in court to answer the bench warrant, and the warrant was recalled. The court then changed respondent’s probation from unsupervised to active supervised with the following special conditions: 1) respondent must obtain a substance abuse evaluation; 2) respondent must be drug tested that day; 3) respondent must submit to random drug testing; 4) respondent must not change addresses without the approval of his probation officer or the court; and 5) respondent must refrain from any mood altering substances and alcohol.
On December 21, 2004, respondent appeared in court for a probation review and was ordered to immediately submit to drug testing. When the test came back positive for drug use, the court added more special conditions to respondent’s probation, including the requirement that he enroll in a detoxification center and undergo inpatient substance abuse treatment.
The ODC alleged respondent’s conduct violated Rule 8.4(b) of the Rules of Professional Conduct.
Count III — The Cross Matter
In November 2003, Andrew Gross hired respondent to defend his company, Radiation Technical Services (“RTS”), against a civil lawsuit in which Temco Temporaries, Inc. (“TTI”) claimed that RTS owed it approximately $4,000 for work performed by its temporary laborers. Respondent failed to timely or properly file a response to TTI’s request for admissions. He also failed to appear for a hearing, resulting in the granting of TTI’s motion for summary judgment, and failed to timely appeal the judgment.
[¿Subsequently, TTI’s petition for garnishment of RTS’s bank account was served on respondent. However, respondent failed to notify Mr. Gross of the petition and failed to file a timely answer. Consequently, in April 2004, the amount of $5,884.67 was garnished from RTS’s bank account, causing various checks drawn on the account to be dishonored. In July 2004, a second garnishment citation was served on RTS through respondent, and respondent again failed to answer or inform Mr. Gross of the situation.
Respondent admitted the allegations of misconduct and informed the ODC that he attempted to mitigate the damage to RTS and Mr. Gross by offering to pay Mr. Gross the amount of TTI’s judgment that he felt was reasonably contested.
The ODC alleged respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence *1037 and promptness in representing a client) and 1.4 (failure to communicate with a client).
DISCIPLINARY PROCEEDINGS
In January 2011, the ODC filed formal charges against respondent. Respondent failed to answer the formal charges. Accordingly, the factual allegations contained therein were deemed admitted and proven by clear and convincing evidence pursuant to Supreme Court Rule XIX, § 11(E)(3). No formal hearing was held, but the parties were given an opportunity to file with the hearing committee written arguments and documentary evidence on the issue of sanctions. Respondent filed nothing for the hearing committee’s consideration.

Hearing Committee Report

After considering the ODC’s deemed admitted submission, the hearing committee found that respondent, on two separate occasions, violated felony | .^provisions of Title 40 of the Louisiana Revised Statutes. Respondent pleaded guilty to all charges, conclusively establishing his guilt. But for respondent’s apparent willingness to participate in an inpatient drug rehabilitation program, he likely would be incarcerated today. Respondent also pleaded guilty to a DWI charge, conclusively establishing his guilt in that matter.
In the Gross matter, respondent admitted that he violated a duty owed to Mr. Gross by failing to diligently represent Mr. Gross or keep him informed about the status of his legal matter. The complaint and supporting documents in the Gross matter, along with respondent’s admission, establish a violation of the Rules of Professional Conduct by clear and convincing evidence.
Based on these facts, the committee determined that respondent violated the Rules of Professional Conduct as alleged in the formal charges. The committee further determined that respondent violated duties owed to his client, the public, the legal system, and the legal profession. Respondent acted intentionally with respect to the felony drug convictions; he acted knowingly with respect to the DWI conviction; and he acted negligently with respect to the Gross matter. After reviewing the ABA’s Standards for Imposing Lawyer Sanctions, the committee determined that the applicable baseline sanction in this matter is disbarment.
In aggravation, the committee found multiple offenses and illegal conduct, including that involving the use of controlled substances. In mitigation, the committee found only the absence of a prior disciplinary record. The committee noted that it did not find the mitigating factor of chemical dependency because it had “no information upon which to conclude that [respondent] has been successfully rehabilitated from any chemical dependency or that the recurrence of the misconduct is unlikely.”
Under these circumstances, the committee recommended that respondent be disbarred.
lfiIn response to the committee’s report, respondent submitted documentation to the disciplinary board evidencing his successful completion of the 28-day inpatient treatment program and the halfway house program at the Right Turn of Maryland.[2] The documentation further indicated that respondent was diagnosed with opiate dependence and cocaine abuse, but that he had been drug-free since his admission to the Right Turn of Maryland on August 20, 2010.
*1038 Respondent thereafter appeared at oral argument conducted in this matter by a panel of the disciplinary board. There, he spoke to his past misconduct and his current path to recovery. Respondent also explained that he had recently completed more than a year of in-house substance abuse treatment.

Disciplinary Board Recommendation

After reviewing the record of this deemed admitted matter, the disciplinary board found that respondent violated the Rules of Professional Conduct as charged in the formal charges.[3] The board determined that respondent knowingly and intentionally violated duties owed to the legal system and the legal profession. His misconduct caused actual harm to the legal profession and serious potential harm to the public. The board agreed with the committee that the applicable baseline sanction is disbarment.
In aggravation, the board found multiple offenses and illegal conduct, including that involving the use of controlled substances. In mitigation, the board found the following factors: absence of a prior disciplinary record, personal or emotional problems, full and free disclosure to the disciplinary board and a 17cooperative attitude toward the proceedings, imposition of other penalties or sanctions, and remorse. In addition, considering respondent’s testimony before the board panel, which was found to be “compelling and credible,” the board agreed that the mitigating factor of chemical dependency is present, and that respondent “is well on his way to living a healthy and productive life.”
Based upon the weight of the mitigating factors, most notably respondent’s successful recovery from chemical dependency and his ongoing treatment, the board recommended that respondent be suspended from the practice of law for three years, retroactive to November 9, 2010, the date of his interim suspension. The board further recommended that respondent be required to execute a recovery agreement with the Lawyers Assistance Program (“LAP”).
Although neither respondent nor the ODC filed an objection to the board’s recommendation, on May 23, 2012, we ordered briefing addressing the issue of an appropriate sanction. Both respondent and the ODC filed briefs in response to the court’s order.
DISCUSSION
Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence. In re: Banks, 09-1212 (La.10/2/09), 18 So.3d 57.
In cases in which the lawyer does not answer the formal charges, the factual allegations of those charges are deemed admitted. Supreme Court Rule XIX, § 11(E)(3). Thus, the ODC bears no additional burden to prove the factual allegations contained in the formal charges after those charges have been deemed admitted. However, the language of § 11(E)(3) does not encompass legal | ^conclusions that flow from the factual allegations. If the legal conclusion the ODC seeks to prove (i.e., a violation of a specific rule) is not readily apparent from the deemed admitted facts, *1039 additional evidence may need to be submitted in order to prove the legal conclusions that flow from the admitted factual allegations. In re: Donnan, 01-3058 (La.1/10/03), 838 So.2d 715.
The record reveals that respondent was convicted of three drug- and alcohol-related criminal offenses and that he neglected a legal matter and failed to communicate with his client. Based on these facts, respondent has violated the Rules of Professional Conduct as alleged in the formal charges.
Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct. Louisiana State Bar Ass’n v. Reis, 513 So.2d 1173 (La.1987).
Respondent knowingly violated duties owed to his client, the public, the legal system, and the profession. His misconduct caused actual harm to his client and the legal profession. Considering the pri- or eases of this court, as well as the ABA’s Standards for Imposing Lawyer Sanctions, the baseline sanction in this matter is disbarment.
The only aggravating factors present are multiple offenses and illegal conduct. The record supports the following mitigating factors: absence of a prior disciplinary record, personal or emotional problems, timely good faith effort to make restitution or to rectify the consequences of the misconduct, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, mental disability or chemical dependency, including alcoholism or drug abuse, imposition of other penalties or sanctions, and remorse.
lain determining the appropriate sanction in this case, we begin with the well-recognized proposition that chemical dependency may cause a lawyer to commit acts of professional misconduct that would not have occurred but for his impairment. Louisiana State Bar Ass’n v. Longenecker, 538 So.2d 156,163 (La.1988) (on rehearing). When there is an obvious causal connection between the substance abuse and the misconduct, and the lawyer has made meaningful efforts to address his problem, we have often chosen to impose a more lenient sanction than would otherwise be called for. See, e.g., In re: Williams, 10-1972 (La.1/7/11), 52 So.3d 864 (lawyer suspended from the practice of law for three years, with eighteen months deferred, for misconduct including his conviction of possession of cocaine; the lawyer’s drug addiction contributed to his misconduct, but he sought treatment and signed a LAP contract); In re: Steinhardt, 04-0011 (La.9/9/04), 883 So.2d 404 (lawyer suspended for three years, with two years deferred, following her conviction of possession of marijuana; the mitigating circumstances included her successful recovery from her marijuana addiction and her entry into a recovery agreement with LAP); In re: Doyle, 07-2015 (La.4/4/08), 978 So.2d 904 (baseline sanction for the lawyer’s misconduct, including conversion of client and third-party funds, was unquestionably disbarment, but the mitigating circumstances surrounding his successful recovery from an addiction to drugs and alcohol warranted a downward deviation from the baseline to a three-year suspension).
Here, it is abundantly clear that respondent’s misconduct (his drug- and alcohol-related criminal convictions as well as his neglect of a client matter) is directly related to his substance dependence. However, we find that respondent has demonstrated a meaningful and sustained period *1040 of successful rehabilitation from his chemical dependency, and that his recovery has made a recurrence of his misconduct very unlikely. Notably, since completing the treatment and aftercare | mprograms at the Right Turn of Maryland, respondent has been drug-free for nearly two years. Respondent has also voluntarily entered into a recovery agreement with the Maryland LAP program, and the director of the program reports that respondent’s performance under the agreement has been exemplary to date.
Under these circumstances, the ABA’s Standards for Imposing Lawyer Sanctions emphasizes that “the greatest weight” should be assigned to the mitigating factor of chemical dependency. We conclude that this mitigating factor, along with the other such factors present in this case, justifies a lengthy suspension, rather than disbarment.
Accordingly, we will accept the disciplinary board’s recommendation and suspend respondent from the practice of law for three years, retroactive to the date of his interim suspension.[4]
DECREE
Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that Lewis B. Blanche, Louisiana Bar Roll number 27383, be and he hereby is suspended from the practice of law for three years, retroactive to November 9, 2010, the date of his interim suspension. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.

 Chief Justice Kimball not participating in the opinion.

. In 2005, this court transferred respondent to disability inactive status. In re: Blanche, 05-0116 (La. 1/26/05), 892 So.2d 580. In 2010, the court transferred respondent back to active status and simultaneously interimly suspended him from the practice of law. In re: Blanche, 10-2255 (La.11/9/10), 47 So.3d 405.

. Respondent completed the inpatient treatment program on September 16, 2010, and completed the halfway house program on September 19, 2011. At present, respondent still resides at the Right Turn facilities.

. The board additionally found an uncharged violation of Rule 8.4(a) (violation of the Rules of Professional Conduct) as a result of respondent’s violation of Rules 1.3, 1.4, and 8.4(b) of the Rules of Professional Conduct. While the board is correct that respondent’s violation of the rules charged in the formal charges also means that he violated Rule 8.4(a), we note that such a finding adds nothing to the analysis of this matter.

. In response to the board's recommendation that he be required to enter into a LAP contract, respondent has attached documentation to his brief filed in this court evidencing his participation in the LAP program in Maryland, where he currently resides. We encourage respondent to continue to avail himself of the resources of the Maryland LAP, or to contact the Louisiana LAP director if he decides to return to Louisiana. In either event, this court will carefully review respondent's efforts at rehabilitation if and when he applies for reinstatement after serving his suspension. See Supreme Court Rule XIX, § 24(E)(3).